## ASA B. ISRAEL

*v.*

## PETER REDDING.

1. STAMP ACT—*for what purposes of evidence an unstamped instrument may be used.* Even if a note is not admissible in evidence *per se*, by reason of its not being stamped, yet, where suit is brought upon the original consideration for which the note was given, the note may be admitted for the purpose of explaining the testimony of a witness, in reference to the date of a settlement between the parties and the amount found due, although it bears no stamp.

2. And when a note is received for such a purpose, it must be taken as a whole, and as well for one party as the other.

3. EVIDENCE *to authorize a recovery of a debt when the contract provides a specific means of payment.* Where an action is brought upon the original consideration for which a note was given, and it appears that the note provided as a means of payment, that the plaintiff was to retain the amount out of the proceeds of the sales of certain property to be made by him, he cannot recover until he proves that the funds are not in his hands, or that there has been a breach of that provision of the note.

WRIT OF ERROR to the Circuit Court of Marshall county; the Hon. S. L. RICHMOND, Judge, presiding.

This was an action of assumpsit commenced in the Circuit Court of Woodford county, by Peter C. Redding against Asa B. Israel. The cause was afterward removed into the Circuit Court of Marshall county, upon change of venue.

The declaration contained several special counts upon the following instrument:

"$645.25. Due P. C. Redding six hundred and forty-five dollars and twenty-five cents ($645.25), on settlement this 7th day of November, 1863, to be paid out of the proceeds of sales

of territory sold by Redding & Johnson, to be paid as follows : retaining one-half of proceeds due Israel until the said amount is liquidated.                                        A. B. ISRAEL."

The common counts were also added.

On the trial the plaintiff offered the due-bill in evidence, to which the defendant objected because there was no revenue stamp upon it. The court sustained the objection.

The plaintiff then offered to read in evidence of the deposition of N. A. Johnson certain interrogatories and answers, to the reading of which the defendant below objected, for the reasons that the same were incompetent and irrelevant; but the court overruled the defendant's objection, and allowed the interrogatories and answers to be read, which are substantially as follows :

*Int.* 5. Witness is asked to look at note shown him, and state in whose handwriting the body of said note is, and by whom it is signed, and hand it to the party taking the deposition, and have it attached to the deposition, to be marked and referred to as an exhibit.

*Ans.* I have looked at the note ; it is in my handwriting, and is signed by A. B. Israel. I hand it to the person taking my deposition, to be marked A. and attached thereto as evidence.

*Int.* 6. Who requested you to write said note ? when was the same written ? and who was present at the time ?

*Ans.* Both plaintiff and defendant requested me to write it. It was written when dated. Plaintiff, defendant and myself were all I remember of being present.

*Int.* 7. State the consideration for which said note was given.

*Ans.* It was part for the services rendered by plaintiff for defendant, and part for property furnished by plaintiff to defendant.

*Int.* 8. State if you know of any settlement between the plaintiff and defendant about the time said note was given ; if so, state fully all you know about said settlement.

*Ans.* There was a settlement between them about the time said note was given for balance owed by defendant to plaintiff. There was horse trade and real estate connected with said settlement; but how they figured in said settlement, I do not know.

*Int.* 12. State if there was any settlement between plaintiff and defendant about the time said note was given; and, if so, if any thing was found due from defendant to plaintiff, and the amount.

*Ans.* There was such settlement at the time the attached note was given, and the amount due from defendant to plaintiff was the amount said note was given for.

*Int.* 14. State what arrangement was entered into between defendant and yourself about the sale of maps and territory.

*Ans.* I was to take sole control of the sale of all his territory and maps, as general agent for defendant; but the said arrangement was never consummated.

Which being read, the defendant excepted to the ruling of the court in allowing said evidence.

The plaintiff then offered to read in evidence the due-bill before mentioned, which was attached to said deposition as an exhibit, and referred to by the witness, to explain his testimony, and the defendant objected; but the court overruled the objection, and admitted the exhibit as a memorandum to explain the testimony of the witness.

This was all the evidence offered by the plaintiff.

The defendant then read in evidence another portion of the deposition of the witness Johnson, in which he testified: I am acquainted with some matters connected with the subject-matter in controversy; the plaintiff and I did not sell any territory for the defendant after the date of the settlement between them, and the note. There was a demand by the plaintiff of defendant of a new note, without conditions, which the latter refused to give.

The defendant also read the deposition of *A. M. Myers,* who testified: Defendant has been engaged in selling maps, called Israel's maps, and county and State rights to sell the

same. I have seen a note, which I was informed, by both parties, was the result of a settlement. I was instructed to make a deed to plaintiff from Israel, for the county of Kankakee.

The defendant then offered to read the exhibit, signed by A. B. Israel, to the court, as a memorandum of the settlement between the parties, and to show how, when and out of what funds the account stated and money found due is payable. To the reading of which the plaintiff objected, on the ground that the same is void for want of a revenue stamp, under the act of congress; and the court sustained the objection, it appearing that the same was not stamped, and refused to allow said memorandum to be given in evidence. And defendant excepted to the ruling of the court in refusing to allow said exhibit to be read.

This was all the evidence in the cause.

The court found the issues for the plaintiff, and after overruling motions for a new trial and in arrest of judgment, rendered a judgment in pursuance of the finding.

The defendant thereupon sued out this writ of error. The questions arising under the assignment of errors are, whether the due-bill, in the absence of a stamp, was admissible for the purpose of explaining the testimony of the witness, Johnson; and if admitted for that purpose, whether it was evidence for the defendant to show in what manner the debt was to be paid.

Messrs. BURNS & CUMMINS and Mr. A. E. STEVENSON, for the plaintiff in error.

Messrs. INGERSOLLS & PUTERBAUGH, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit brought by Peter C. Redding, in the Woodford Circuit Court, against Asa B. Israel. The venue was afterward changed to Marshall county, where

a trial was held at the January Term, 1866, and plaintiff recovered a judgment for $663.24 and costs, to reverse which the cause is brought to this court, on error.

It is insisted, that the written instrument upon which the suit was brought, and described in the first and second counts of the declaration, was improperly admitted in evidence, because it was not stamped as required by the internal revenue law. On the other side, it is urged that it was, and that it was neither used nor admitted as evidence; that it was only referred to as a memorandum and exhibit to a deposition, and that the recovery was had on the original consideration under the common counts, as proved by Johnson; that the court below only referred to the instrument to ascertain the date and amount found due on the settlement proved by Johnson; that for such a purpose a stamp was not necessary.

Johnson testified, that when the due-bill was given a settlement was had between the parties, on account of services by defendant in error, rendered for plaintiff in error, and a land transaction and a horse trade. That there was then found to be due to the defendant in error the sum named in the due-bill. This witness however failed to state the sum. To explain his deposition, defendant in error offered to read the due-bill, and plaintiff in error objected, but did not specify the want of a stamp as a ground for excluding it, but the court permitted it to be read for that purpose.

In the case of *Jacob* v. *Lindsay*, 1 East, 460, it was *held*, that an account receipted, but not stamped, although it could not be read in evidence *per se*, yet it was competent for the plaintiff to prove, that, upon the calling over the various articles to the defendant, he admitted that he had received them; and the witness might refer to the account to refresh his memory. Again, in the case of *The King* v. *The Inhabitants of Pendelton*, 15 East, 449, it was *held*, that while unstamped articles of agreement could not be read in evidence, the court might look at them to ascertain when the time of service of one of the parties ceased, so as to enable them to determine their course in receiving oral evidence of a parol agreement for service at

wages, after the apprenticeship had ceased. To the same purport is the case of *Maugham* v. *Hubbard*, 8 Barn. & Cressw. 14. And the same rule is announced in Greenleaf's Ev. § 436. And this seems to be the well settled doctrine of the courts. We are therefore unable to say that the court erred in permitting it to be read for that purpose.

Even if it could not have been read as evidence to prove the contract, it was admissible for the purpose that it was read. We do not deem it necessary to determine whether the general government has the power to prevent such a contract from being used in evidence under State laws, as it was admissible either with or without a stamp for the purpose for which it was used. But when it was thus admitted to explain Johnson's deposition, it showed another thing, and that was, that the money found to be due was to be paid in a particular manner. It provided that the money should be paid out of the proceeds of sales of territory, sold by one Johnson and defendant in error, by retaining the half due defendant in error, until the note should be paid. When this instrument was received in evidence to explain the deposition, it had to be taken as a whole, and as well for one party as the other. There is no evidence in the record to show that the note was not paid in the mode specified on its face. From this language it is reasonable to infer, that defendant in error Johnson, or some other person, had control of indebtedness already made, or that they were to make sales, from which the money was to be paid. It provides that the money is to be paid by retaining the half due plaintiff in error. We think this clearly implies that defendant in error had the control of the funds, or at least was to have their control, necessary for its payment. Had these funds been in the hands of any other person the payee could not have retained them. Until he proved that the funds were not in his hands, or that there had been a breach of that provision of the note, he could not recover.

The judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*